IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

THOMAS MICHAEL FRANCIS,  *
et al.                   *

    Plaintiffs,       *

        v.              *   CIVIL NO.: WDQ-11-1030

ALLSTATE INSURANCE CO.,  *

    Defendant.        *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Thomas Michael Francis and his mother, Danielle Francis (the "Plaintiffs"), seek a declaration that Allstate Insurance Co. ("Allstate") had a duty to defend the Plaintiffs in a tort action in the Circuit Court for Frederick County. For the following reasons, the Court will deny the Plaintiffs' motion to remand, and grant Allstate's motion for summary judgment.

I. Background[1]

Thomas Francis, a Maryland citizen, is the son of Danielle Francis, a California citizen. Compl. ¶¶ 2-3, 6.

In March 2007, Danielle Francis was covered by an Allstate renter's insurance policy (the "Policy"), which provided liability coverage for damages she was obligated to pay "because

---

[1] In reviewing Allstate's motion for summary judgment, the Plaintiffs' evidence "is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

of bodily injury or property damage arising from an occurrence." Mem. in Supp. of Mot. for Summ. J. 2-3; Policy, ECF No. 17-5, at 31. The Policy defined "bodily injury" as "physical harm to the body, including sickness or disease, and resulting death." Policy at 19. "Property damage" meant "physical injury to or destruction of tangible property, including loss of its use." Id. at 20. The Policy defined an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 20. The Policy did not define "accident."

The Policy also provided that,

> [s]ubject to the following paragraph, the laws of California shall govern any and all claims or disputes in any way related to this policy.
>
> If a[n] . . . occurrence for which coverage applies under this policy happens outside California, claims or disputes regarding that . . . covered occurrence may be governed by the laws of the jurisdiction in which that . . . covered occurrence happened, only if the laws of that jurisdiction would apply in the absence of a contractual choice of law provision such as this.

Policy at 43. Allstate mailed the Policy to Danielle Francis's California home. Glen Davis Decl., ECF No. 17-4 at ¶ 3.

In March 2008, Troy Towers sued the Plaintiffs in the Circuit Court for Frederick County, Maryland ("the Circuit Court") for defamation, false light invasion of privacy, malicious prosecution, civil conspiracy, and intentional infliction of emotional distress. ECF No. 19-3. Towers alleged

that the Plaintiffs had "knowingly" or "negligently" made "false and defamatory statements about [him]," including that he had sexually abused Thomas Francis and other students at the Maryland School for the Deaf. *Id.* at 4-5. Towers asserted that he had suffered "severe mental anguish, loss of reputation, medical and other related expenses, and loss of income" and sought $1 million in compensatory damages and $5 million in punitive damages. *Id.* at 9-10.

The Plaintiffs admitted that they had made statements about Towers to school officials and police, but "for the sole reason of trying to protect [Thomas Francis]." *See* ECF Nos. 19-5, 19-6 (Statements of Danielle and Thomas Francis). They denied any intent to slander or libel Towers, invade his privacy, or maliciously prosecute him. *Id.*

On March 11, 2011, after Allstate "refused . . . to provide a defense for the Plaintiffs in [Towers's] tort suit," the Plaintiffs sued Allstate in the Circuit Court seeking a declaration that Allstate was "obligated to provide a defense" in Towers's tort suit, and is required to pay "any judgment which the Plaintiffs may [have] be[en] liable to pay" to Towers, "all of the costs and expenses related to the underlying tort action, including reasonable attorneys' fees," and "the costs and expenses which they have, and will, incur in prosecuting this

declaratory judgment action, including reasonable attorneys' fees." ECF No. 2 at 3-4.

On March 16, 2011, the Circuit Court granted summary judgment for Thomas and Danielle Francis in Towers's tort suit. ECF No. 19 at 2; ECF No. 23 at 4. On April 6, 2011, the Circuit Court entered a final judgment in favor of all the defendants in Towers's tort suit. ECF No. 19 at 2; ECF No. 23 at 4. Thomas and Danielle Francis spent $66,347 in attorneys' fees defending Towers's lawsuit.[2]

On April 20, 2011, Allstate removed the declaratory action to this Court on the basis of diversity jurisdiction.[3] On May 19, 2011, the Plaintiffs argued that removal had been untimely and moved to remand the case to the Circuit Court. ECF No. 12. On July 18, 2011, the Court denied that motion. See ECF Nos. 14, 15.

---

[2] ECF No. 19 at 2. The Plaintiffs have cited this figure three times in their opposition, see id. at 2, 5, but they have also asserted that they had to incur "almost $70,000.00 in defense costs to prove that [they] were not liable" to Towers, see id. at 2, and had incurred defense costs of $69,472 "at the time of removal," see id. at 6. For the pending motions, the Court will assume that the Plaintiffs spent $66,347.

[3] ECF No. 1. Allstate is a citizen of Illinois, where it is incorporated and has its principal place of business. See ECF No. 1 ¶ 5; Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC, 636 F.3d 101, 102 (4th Cir. 2011) ("For federal diversity jurisdiction purposes, a corporation is a citizen of the states in which it has been incorporated and in which it has its principal place of business.").

4

On October 28, 2011, Allstate moved for summary judgment. ECF No. 17. On November 18, 2011, the Plaintiffs opposed that motion and moved to remand, arguing that the Court lacks subject matter jurisdiction. ECF No. 19. On December 5, 2011, Allstate filed a reply. ECF No. 23.

II. Analysis

In response to Allstate's motion for summary judgment, the Plaintiffs argue, *inter alia*, that this Court lacks subject matter jurisdiction. ECF No. 19 at 3-6. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction [over a removed action], the case shall be remanded." 28 U.S.C. § 1447(c). Thus, the Court will not consider the motion for summary judgment unless it determines it has jurisdiction.

A. Subject Matter Jurisdiction

Federal jurisdiction is "fixed at the time the . . . notice of removal is filed." *Dennison v. Carolina Payday Loans, Inc.*, 549 F.3d 941, 943 (4th Cir. 2008). If, at that time, the parties are citizens of different states and the amount in controversy exceeds $75,000, the Court has jurisdiction on the basis of diversity -- "regardless of later changes in . . . the amount in controversy."[4]

---

[4] *Porsche Cars N. Am., Inc. v. Porsche.net*, 302 F.3d 248, 255-56 (4th Cir. 2002); 28 U.S.C. § 1332.

The Plaintiffs argue that the amount in controversy was below that threshold when Allstate filed its notice of removal. ECF No. 19 at 3-6. Because the Circuit Court had granted them summary judgment in Towers's tort suit, the Plaintiffs contend that they could have recovered no more than the $66,347 they had spent to defend that action. *Id.* They argue that the amount in controversy did not include any potential indemnity obligation of Allstate, nor the Plaintiffs' attorneys' fees in this action.[5]

Allstate counters that the amount in controversy included (1) the amount the Plaintiffs spent to defend Towers's tort action, (2) Allstate's potential indemnification obligation in that action, and (3) the Plaintiffs' attorneys' fees in this suit. ECF No. 23 at 3-8. According to Allstate, these figures exceeded $75,000 at the time of removal. *Id.* at 8.

1. The Amount in Controversy in a Declaratory Action

When a plaintiff seeks declaratory relief, the amount in controversy is the "value of the object of the litigation."[6] The Court must consider "the potential pecuniary effect that a

---

[5] *Id.* at 3 & n.3. The Plaintiffs argue alternatively that, if the amount in controversy included the attorneys' fees in this action, the Court should have a hearing to determine amount of those fees or allow the Plaintiffs to "cap their . . . costs at $5,000, to streamline this issue." *Id.* n.3.

[6] *Toler v. State Farm Mut. Auto. Ins. Co.*, 25 F. App'x 141, 143 (4th Cir. 2001) (per curiam) (quoting *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977)).

judgment would have on either party to the litigation."[7] The amount in controversy requirement is met if "either the direct pecuniary value of the right the plaintiff seeks to enforce, or the cost to the defendant of complying with any prospective equitable relief, exceeds $75,000."[8] The Court "should consider all the evidence in the record" and "specify exactly what relief the plaintiff seeks." *Lee*, 739 F. Supp. 2d at 946 (internal citations and quotation marks omitted).

In their complaint for declaratory judgment, the Plaintiffs seek a declaration that Allstate was "obligated to provide a defense" in Towers's tort suit, and is required to pay "any judgment which the Plaintiffs may [have] be[en] liable to pay" to Towers, "all of the costs and expenses related to the underlying tort action, including reasonable attorneys' fees," and "the costs and expenses which they have, and will, incur in prosecuting this declaratory judgment action, including reasonable attorneys' fees." ECF No. 2 at 3-4.

a. Allstate's Potential Indemnity Obligation

The Plaintiffs argue that, at the time of removal, the amount in controversy did not include any potential indemnity in

---

[7] *Liberty Mut. Fire Ins. Co. v. Hayes*, 122 F.3d 1061 (table), 1997 WL 568673, at *3 (4th Cir. 1997) (per curiam) (*citing Gov't Emps. Ins. Co. v. Lally*, 327 F.2d 568, 569 (4th Cir. 1964).

[8] *Lee v. Citimortgage, Inc.*, 739 F. Supp. 2d 940, 946 (E.D. Va. 2010) (internal citation and quotation marks omitted).

Towers's tort suit, because the Circuit Court had granted Plaintiffs summary judgment. ECF No. 19 at 3. Allstate argues that it still faced a potential indemnity of at least $100,000[9] because the time for Towers to appeal the Circuit Court's decision did not expire until after Allstate had removed this action. ECF No. 23 at 4.

At the time of removal, Allstate no longer faced potential indemnity liability. The Plaintiffs had been granted summary judgment, and the Circuit Court entered a final order granting judgment to all the defendants on April 6, 2011 -- 14 days before Allstate removed the declaratory action.[10] Allstate has not explained why the amount in controversy in this case included potential indemnity in the tort action merely because Towers had an opportunity to appeal the Circuit Court's decision.[11] Thus,

---

[9] Although Towers sought $1 million in compensatory damages and $5 million in punitive damages, Allstate contends that the Policy limited coverage to $100,000 per occurrence. ECF No. 23 at 5.

[10] See Docket Entry No. 130, *Towers v. Francis*, Case No. 10C08001174, Maryland Judiciary Case Search, http://casesearch.courts.state.md.us (search "Troy Towers" for "name" and follow hyperlink for case number 10C08001174); ECF No. 1.

[11] Allstate cites several cases from other circuits that have found that the amount in controversy in removal cases generally includes an insurance company's potential indemnity obligation in the underlying tort action. See ECF No. 23 at 4-5. But in none of the cited cases had a court entered a judgment that the insured was not liable in the underlying tort action. *See id.* (*citing Grinnell Mutual Reinsurance Co. v. Shierk*, 121 F. 3d 1114, 1116 (7th Cir. 1997); *Hartford Ins. Grp. v. Lou-Con Inc.*,

the Court will exclude any potential indemnity obligation in its calculation of the amount in controversy.

### b. The Plaintiffs' Attorneys' Fees In This Action

Although they seek to recover their attorneys' fees for litigating this declaratory action, the Plaintiffs contend that the amount in controversy at the time of removal did not include these fees. ECF No. 19 at 2 n.3. Allstate counters that the jurisdictional amount must account for the attorneys' fees in this lawsuit, and the fees establish that more than $75,000 was in controversy at the time of removal. ECF No. 23 at 5-8.

The Court agrees that the amount in controversy includes the attorneys' fees in this action. The Plaintiffs sued under the Maryland Uniform Declaratory Judgments Act,[12] which allows an "award of costs as may seem equitable and just." Md. Code Ann., Cts. & Jud. Proc. § 3-410. Maryland courts have held that an insurer

> is liable for the damages, including attorneys' fees, incurred by an insured as a result of the insurer's breach of its contractual obligation to defend the insured against a claim potentially within the policy's coverage, and this is so whether the attorneys' fees are incurred in defending against the underlying damage claim or in a declaratory judgment action to determine coverage and a duty to defend.

---

293 F.3d 908, 911-12 (5th Cir. 2002); *Centennial Ins. Co. v. Patterson*, 495 F. Supp. 2d 157, 168 (D. Me. 2007)).

[12] Md. Code Ann., Cts. & Jud. Proc. §§ 3-401 *et seq.*

*Allstate Ins. Co. v. Campbell*, 639 A.2d 652, 392 (Md. 1994) (internal citation and quotation marks omitted). When Maryland law permits recovery of attorneys' fees, "[p]otential attorneys' fees should be considered in determining whether the amount in controversy in a diversity action exceeds the jurisdictional threshold." *Gilman v. Wheat, First Sec., Inc.*, 896 F. Supp. 507, 511 (D. Md. 1995).

The potential attorneys' fees in this action and the costs of defending Towers's tort suit exceed $75,000. When Allstate removed this action, the Plaintiffs had incurred $66,347 in attorneys' fees in the underlying tort action, which was resolved by summary judgment. See ECF No. 19 at 2. Experience and common sense suggest that the Plaintiffs' attorneys' fees in this case will exceed $8,653 -- the difference between $75,000 and the $66,347 the Plaintiffs spent in Towers's lawsuit.[13] This action involves federal jurisdiction, contract interpretation, and choice of law issues that were not addressed in the underlying tort action. Accordingly, the Court had diversity jurisdiction

---

[13] *See In re Microsoft*, 127 F. Supp. 2d 702, 719 (D. Md. 2001) (finding that "common sense compell[ed] the conclusion" that the amount in controversy exceeded $75,000). *Accord Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1064 (11th Cir. 2010) (district court may rely on "judicial experience and common sense" in calculating the amount in controversy) ; *McCoy v. Erie Ins. Co.*, 147 F. Supp. 2d 481, 489 (S.D. W. Va. 2001) ("the court is not required to leave its common sense behind" when determining the amount in controversy) (internal citation and quotation marks omitted).

when the case was removed, and the Court will deny the Plaintiffs' motion to remand.[14]

B. Motion for Summary Judgment

A court must grant summary judgment if the record shows no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [his] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must also abide by its "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to

---

[14] The Court need not hold a hearing or review invoices to determine the actual amount the Plaintiffs have spent on attorneys' fees in this action. For purposes of calculating the jurisdictional amount, the critical issue is the "*potential* pecuniary effect that a judgment would have," not the actual amount spent. *See Liberty Mut. Fire Ins. Co.*, 1997 WL 568673, at *3 (emphasis added).

11

trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

C. Allstate's Motion

Allstate argues that it had no duty to defend the Plaintiffs in Towers's tort suit, because (1) the suit alleged intentional conduct, not an "accident," (2) the alleged torts were neither "bodily injury" nor "property damage," and (3) the Policy excluded coverage of "bodily injury or property damage" that was reasonably foreseeable because of an insured's "intentional or criminal acts or omissions." ECF No. 17 at 1-2.

1. Which States' Laws Apply

As a preliminary matter, the Court must determine which states' laws govern the parties' dispute. Allstate argues that California law applies; the Plaintiffs argue that Maryland law applies. *See* ECF No. 17-1 at 5-7; ECF No. 19 at 7-9; ECF No. 23 at 9-12. For the following reasons, the Court will consult California's contract law and Maryland's tort law.

In diversity jurisdiction cases, a federal court must apply the choice-of-law rules of the state in which it sits.[15] "Maryland appellate courts have long recognized the ability of parties to specify in their contracts which state's law will

---

[15] *Riesett v. W.B. Doner & Co.*, 293 F.3d 164, 173 n.5 (4th Cir. 2002) (citing *Klaxon Co. v. Stentor Mfg. Co.*, 313 U.S. 487, 496 (1941)).

12

apply."[16] Here, the Policy provided that "the laws of California [would] govern any and all . . . disputes," except that disputes could "be governed by the laws of the jurisdiction in which [a] . . . covered occurrence happened" if "the laws of that jurisdiction would apply in the absence of a contractual choice of law provision." Policy, ECF No. 17-5 at 43. Because the torts alleged in Towers's suit took place in Maryland, the Court must determine whether Maryland law would apply absent this provision.

Maryland courts interpreting insurance contracts follow the doctrine of *lex loci contractus* and apply the law of the state where the policy is delivered and the premiums are paid.[17] Here, the Policy was delivered and the premiums were paid in California, where Danielle Francis lived.[18] Accordingly, the Court will apply California contract law to determine whether

---

[16] *Henry v. Gateway, Inc.*, 979 A.2d 287, 297 (Md. Ct. Spec. App. 2009). Contract law applies because "[a]n insurance policy is a contract between the insurer and the insured," *Swartzbaugh v. Encompass Ins. Co. of Am.*, 28 A.3d 785, 796 (Md. Ct. Spec. App. 2011), and the insurer's duty to defend "rests on the construction and interpretation of the contract," *Universal Underwriters Ins. Co. v. Lowe*, 761 A.2d 997, 1005 (Md. Ct. Spec. App. 2000).

[17] *Cont'l Cas. Co. v. Kemper Ins. Co.*, 920 A.2d 66, 69 (Md. Ct. Spec. App. 2007).

[18] Glen Davis Decl., ECF No. 17-4 at ¶ 3. Premiums are paid in the state where the insured lives. *See Cooper v. Berkshire Life Ins. Co.*, 810 A.2d 1045, 1052-53 (Md. Ct. Spec. App. 2002) (Maryland law governed dispute when insurer was headquartered in Massachusetts but insureds lived in Maryland).

Allstate had a duty to defend[19] the Plaintiffs in Towers's tort suit.[20] The Court will also consult Maryland tort law.

Under California law, "the duty to defend arises when the facts alleged *in the underlying complaint* give rise to a potentially covered claim."[21] Here, the underlying complaint -- filed in Towers's tort suit -- alleged Maryland tort claims. Thus, the Court must consult Maryland tort law to determine

---

[19] Although the Plaintiffs also sought a declaration that Allstate owed them a duty to indemnify, see ECF No. 2 at 4, they have conceded that the issue is moot because they prevailed in Towers's tort action, see ECF No. 19 at 2. n.1.

[20] The Plaintiffs argue unpersuasively that the Court should apply Maryland law under the doctrine of *renvoi*, which provides that "when the forum court's choice-of-law rules would apply the substantive law of a foreign jurisdiction . . . , the forum court may apply . . . the foreign jurisdiction's choice-of-law rules." See ECF No. 19 at 7; *Erie Ins. Exch. v. Heffernan*, 925 A.2d 636, 642 n.2 (Md. 2007) (internal quotation marks omitted). Maryland courts apply *renvoi* when (1) "Maryland has . . . a substantial relationship . . . to the contract issue presented," and (2) "[t]he state where the contract was entered into would . . . apply Maryland substantive law[.]" *Commercial Union Ins. Co. v. Porter Hayden Co.*, 698 A.2d 1167, 1204 (Md. Ct. Spec. App. 1997). Neither condition is present. Although the alleged torts in Towers's suit occurred in Maryland, the Plaintiffs have not shown that Maryland has a substantial relationship to the Policy. Moreover, California courts would apply California law. The Policy called for application of California law by default unless Maryland courts would apply Maryland law. See Policy, ECF No. 17-5 at 43. But as explained *supra*, Maryland courts would apply California law. The Policy's choice-of-law provision is enforceable under California law, because California has a "substantial relationship to the parties or the transaction," and California law would not be "contrary to a fundamental policy of California." See *Nedloyd Lines B.V. v. Super. Ct. of San Mateo Cnty.*, 834 P.2d 1148, 1150-52 (Cal. 1992) (emphasis omitted).

[21] *Barnett v. Fireman's Fund Ins. Co.*, 108 Cal. Rptr. 2d 657, 663-64 (Cal. Ct. App. 2001) (emphasis added).

14

whether the facts alleged in Towers's suit gave rise to potentially covered claims.[22]  "The duty to defend exists if the insurer becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement." *Delgado*, 211 P.3d at 1086 (internal quotation marks omitted).  "Any doubt as to whether the facts establish that the duty to defend exists must be resolved in the insured's favor." *Kazi v. State Farm Fire & Cas. Co.*, 15 P.3d 223, 228 (Cal. 2001).

   2. The Duty to Defend

   To establish that Allstate had a duty to defend them in Towers's lawsuit, the Plaintiffs must show that the action arose from an "accident" and sought damages for "bodily injury" or property damage."  See *Allstate Ins. Co. v. LaPore*, 762 F. Supp. 268, 270 (N.D. Cal. 1991); Policy at 31, 19-20.

      a. Whether Towers Alleged An "Accident"

   Allstate argues that Towers's tort suit did not implicate a duty to defend under California law because it alleged intentional conduct: defamation.  ECF No. 17-1 at 8-12.  Allstate contends that the Policy covered only accidents and, thus, the Court must grant Allstate summary judgment.  *Id.* at 7.

---

[22] See, e.g., *ABM Indus., Inc. v. Zurich Am. Ins. Co.*, Case No. C-05-3480-SBA, 2006 WL 2595944, at *19 (N.D. Cal. Sept. 11, 2006) (examining Texas tort law to determine whether facts alleged in the underlying complaint gave rise to potentially covered claims under California's duty-to-defend law).

The Plaintiffs counter that "defamation can be accomplished by negligent acts," and Towers alleged that the Plaintiffs "negligently" made "false and defamatory statements about [him]." ECF No. 19 at 11-12. Thus, they argue that Towers's complaint triggered Allstate's duty to defend. See id.

The mere allegation of negligence is not enough to trigger an insurer's duty to defend under California law. *Uhrich v. State Farm Fire & Cas. Co.*, 135 Cal. Rptr. 2d 131, 138-39 (Cal. Ct. App. 2003). "The threshold question is . . . whether the conduct in question constitutes an accident." *Id.* (internal citation and quotation marks omitted). "[B]oth the *means* as well as the result must be unforeseen, involuntary, unexpected, and unusual."[23] "[T]he event may not be deemed an 'accident' merely because the insured did not intend to cause injury."[24] Thus, in

---

[23] *Merced Mut. Ins. Co. v. Mendez*, 261 Cal. Rptr. 273, 279 (Cal. Ct. App. 1989) (emphasis in original). Thus,

> [w]hen a driver intentionally speeds and, as a result, negligently hits another car, the speeding would be an intentional act. However, the act directly responsible for the injury -- hitting the other car -- was not intended by the driver and was fortuitous. Accordingly, the occurrence resulting in injury would be deemed an accident. On the other hand, where the driver was speeding and deliberately hit the other car, the act directly responsible for the injury -- hitting the other car -- would be intentional and any resulting injury would be directly caused by the driver's intentional act.

*Id.* at 279-80 (quoted in *State Farm Gen. Ins. Co. v. Frake*, 128 Cal. Rptr. 3d 301, 310 (Cal. Ct. App. 2011)).

determining whether a complaint alleges an accident, "California courts have focused not on whether the claim requires proof of intent or proof of negligence . . . but rather have looked at whether the alleged act giving rise to damages is purposeful." *Am. Guarantee & Liab. Ins. Co. v. Vista Med. Supply*, 699 F. Supp. 787, 791 (N.D. Cal. 1988).

Guided by these principles, courts have found that defamation under California law cannot be an "accident" for purposes of insurance liability.[25] A defendant must intend to publish a defamatory statement, even if the defendant was only negligent in failing to ascertain the falsity of the statement.[26]

---

[24] *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1364 (9th Cir. 1991) (quoting *Merced Mut. Ins. Co.*, 261 Cal. Rptr. at 279).

[25] *See Stellar v. State Farm Gen. Ins. Co.*, 69 Cal. Rptr. 3d 350, 354 (Cal. Ct. App. 2007) (insurer had no duty to defend in defamation action when there were "no allegations in the underlying action that suggest[ed] [the] statements and actions were unintended or unexpected"); *Tradewinds Escrow, Inc. v. Truck Ins. Exch.*, 118 Cal. Rptr. 2d 561, 569 (Cal. Ct. App. 2002) (defamation cannot be an accident); *Allstate Ins. Co. v. LaPore*, 762 F. Supp. 268, 271 (N.D. Cal. 1991) ("The very nature of defamation precludes the conclusion that it can occur 'accidentally.'"). Under California law, "[t]he tort of defamation involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injury or that causes special damage." *Taus v. Loftus*, 151 P.3d 1185, 1209 (Cal. 2007) (internal quotation marks omitted).

[26] *See LaPore*, 762 F. Supp. at 271 ("Defamation . . . is an *intentional* tort which requires proof that the defendant intended to publish the defamatory statement.") (emphasis in original); *Khawar v. Globe Int'l, Inc.*, 965 P.2d 696, 708 (Cal. 1998)

17

When the defendant voluntarily publishes the statement to a third party, the motivation is irrelevant.[27] The statement is an intentional act and, thus, cannot be an accident. *See Merced Mut. Ins. Co.*, 261 Cal. Rptr. at 279; *Am. Guarantee & Liab. Ins. Co.*, 699 F. Supp. at 791.

Although Towers alleged defamation under Maryland law, the result is the same.[28] As in California, Maryland courts consider defamation an intentional tort,[29] even though a defendant may have acted only negligently in failing to ascertain whether his statements were false or defamatory.[30] The Plaintiffs admit that

---

(private individual need only show that defendant was negligent in failing to ascertain the falsity of the statement).

[27] *See Hogan v. Midland Nat'l Ins. Co.*, 476 P.2d 825, 828-29 (Cal. 1970) (whatever the motivation, a deliberate and calculated act is not an accident), *cited in Delgado*, 211 P.3d at 1090; *Lapore*, 762 F. Supp. at 271 (alleged defamation was not an accident when the "statements were not uttered accidentally").

[28] To prove defamation under Maryland law, a plaintiff must show that (1) the defendant published a statement that tended to expose the plaintiff to public scorn, hatred, contempt, or ridicule, (2) the statement was false, (3) the defendant was legally at fault in making the statement, and (4) the plaintiff suffered harm. *Piscatelli v. Van Smith*, 35 A.3d 1140, 1147 (Md. 2012).

[29] *See, e.g., Houghton v. Forrest*, 989 A.2d 223, 229 (Md. 2010) (referring to defamation as an "intentional tort[]"); *Laubach v. Franklin Square Hosp.*, 556 A.2d 682, 689 (Md. Ct. Spec. App. 1989) (same).

[30] Like California, Maryland applies a negligence standard to defamation actions brought by plaintiffs who are not public figures. *See Jacron Sales Co. v. Sindorf*, 350 A.2d 688, 697 (Md.

they voluntarily made statements about Towers to school officials and police "to protect [Thomas Francis]."[31]  Because the statements were not involuntary, they could not have been an accident under the Policy.  See Merced Mut. Ins. Co., 261 Cal. Rptr. at 279.  Accordingly, Allstate had no duty to defend the Plaintiffs in Towers's tort suit, and it is entitled to judgment as a matter of law.[32]

---

1976); Bagwell v. Peninsula Reg'l Med. Ctr., 665 A.2d 297, 317 (Md. Ct. Spec. App. 1995).

[31] See ECF Nos. 19-5, 19-6.  Thus, the Plaintiffs have not alleged a case of "accidental communication."  See Restatement (Second) of Torts § 577 cmt. o (1977).  "[A]n act that is not intended to communicate to a third person matter that is defamatory and which does not create an unreasonable risk of the communication is not a publication."  Id.  Accidental communication may occur, for instance, when a thief steals a letter containing defamatory statements.  Id.

[32] The Court rejects the Plaintiffs' argument that Towers's false light invasion of privacy claim triggered Allstate's duty to defend.  See ECF No. 19 at 13-14.  This type of invasion of privacy occurs when one publicizes "a matter concerning another that places the other before the public in a false light if (a) the false light . . . would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."  Chinwuba v. Larsen, 790 A.2d 83, 101 n.8 (Md. Ct. Spec. App. 2002) (internal citation and quotation marks omitted), rev'd in part on other grounds, Larsen v. Chinwuba, 832 A.2d 193 (Md. 2003).  Like defamation, it requires the defendant's voluntary communication and, thus, cannot be an accident.  See Piscatelli v. Smith, 12 A.3d 164, (Md. Ct. Spec. App. 2011) (claim for false light invasion of privacy "may not stand unless the claim also meets the standards of defamation") (internal citation and quotation marks omitted).

III. Conclusion

For the reasons stated above, the Court will deny the Plaintiffs' motion to remand, and grant Allstate's motion for summary judgment.

_4/17/12_
Date

_____
William D. Quarles, Jr.
United States District Judge

---

Because Towers did not allege an accident as defined by the Policy, the Court need not address Allstate's alternative arguments why the insurer had no duty to defend the Plaintiffs in the tort action.